IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ADRIAN MAURICE EZELL,            )
# 280195,                        )
                                 )
        Petitioner,              )
                                 )        CIVIL ACTION NO.
v.                               )        3:18-CV-697-ECM-SRW
                                 )            (WO)
DEBRA TONEY, *et al.,*           )
                                 )
        Respondents.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2254 filed
on July 1, 2018, by Adrian Maurice Ezell, an Alabama prisoner proceeding *pro se*. Doc.
1.[1] Ezell challenges his 2011 Russell County conviction for murder and his resulting 30-
year sentence. For the following reasons, the undersigned Magistrate Judge recommends
that Ezell's petition be denied without an evidentiary hearing and that this case be
dismissed with prejudice.

## I.   PROCEDURAL HISTORY

In November 2010, a Russell County grand jury returned an indictment charging
Ezell with the murder of his wife in violation of ALA. CODE § 13A-6-2. Doc. 10-1 at 22–
23. Ezell's case came to trial on August 15, 2011. The following day, after the presentation
of evidence by the State, Ezell elected to plead guilty to murder while specifically reserving

---

[1] References to "Doc(s)." are to the document numbers of the pleadings, motions, and other materials in the
court file, as compiled and designated on the docket sheet by the Clerk of Court. Pinpoint citations are to
the page of the electronically filed document in the court's CM/ECF filing system, which may not
correspond to pagination on the "hard copy" of the document presented for filing.

for appeal the issue of whether the trial court erred in refusing to instruct the jury on manslaughter as a lesser-included offense of the murder charge in his indictment. *Id*. at 97–98. Ezell entered his guilty plea on August 16, 2011. *Id*. at 55–56, 121–33. After a sentencing hearing on September 27, 2011, the trial court sentenced Ezell to 30 years in prison. *Id.* at 8–9, 134–39.

Ezell appealed, arguing that the trial court should have instructed the jury on the lesser-included offense of manslaughter under ALA. CODE § 13A-6-3(a)(2). Doc. 10-2. On June 15, 2012, the Alabama Court of Criminal Appeals issued a memorandum opinion rejecting Ezell's claim and affirming his conviction and sentence. Doc. 10-4. Ezell applied for rehearing, which was overruled on July 6, 2012. Doc. 10-6 at 153–68, 177. Ezell did not file a petition for writ of certiorari with the Alabama Supreme Court. On July 25, 2012, the Alabama Court of Criminal Appeals issued a certificate of judgment. Doc. 10-5.

On October 17, 2014, Ezell filed a state petition for post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure. *See* Doc. 10-6 at 20. In his Rule 32 petition, Ezell asserted claims that (1) the trial court should have instructed the jury on the lesser-included offense of manslaughter; (2) his trial counsel was ineffective for advising him to plead guilty because the case would be reversed on appeal based on the trial court's refusal to instruct the jury on manslaughter; and (3) his appellate counsel was ineffective for failing to obtain the entire record on appeal so the appellate court could assess the merits of his claim regarding the trial court's refusal to instruct the jury on manslaughter. *See id*. at 14–37.

After appointing counsel to represent Ezell on his claims, the trial court held an evidentiary hearing on Ezell's Rule 32 petition on March 1, 2017. Doc. 10-7 at 51, 190–

200; Doc. 10-8 at 1–72. Ezell testified, as did his trial and appellate counsel. On March 7, 2017, the trial court issued an order denying Ezell's Rule 32 petition. Doc. 10-7 at 111–12.

Ezell appealed, pursuing the claims in his Rule 32 petition. Doc. 10-9. On March 9, 2018, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the trial court's judgment denying the Rule 32 petition. Doc. 10-11. Ezell's application for rehearing was overruled on March 23, 2018. Doc. 14-1 at 1. Ezell filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on June 8, 2018. *Id*. at 2. A certificate of judgment issued on that same date. *Id.*

Ezell filed this § 2254 petition on July 1, 2018.[2] Doc. 1. He reasserts his claims that the trial court erred by refusing to instruct the jury on the lesser-included offense of manslaughter and that his trial and appellate counsel rendered ineffective assistance. Docs. 1, 1-1. Respondents argue that Ezell's petition is time-barred under AEDPA's one-year limitation period and that, in any event, the state court correctly adjudicated Ezell's claims on the merits. Docs. 10, 17.

## II.   DISCUSSION

### A.   Timeliness of Ezell's Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a one-year statute of limitations for filing a § 2254 petition. Title 28 U.S.C. § 2244(d) of AEDPA states:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

---

[2] Although the petition was date-stamped as received in this court on July 30, 2018, Ezell represents that he delivered the petition to prison officials for mailing on July 1, 2018. Doc. 1 at 15. Thus, under the prison mailbox rule, the court deems Ezell's petition to be filed on July 1, 2018.

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Under 28 U.S.C. § 2244(d)(1)(A), AEDPA's one-year limitation period runs from the date on which a petitioner's state court judgment becomes final, either "by the conclusion of direct review or the expiration of the time for seeking such review." A state prisoner's conviction becomes final when the United States Supreme Court denies a petition for writ of certiorari or decides on the merits, or when the 90-day period in which to petition the Supreme Court for certiorari expires. *Nix v. Sec'y for the Dep't of Corr.*, 393 F.3d 1235, 1236–37 (11th Cir. 2004). When certiorari review in the state's highest court is not sought, an appellant divests the United States Supreme Court of jurisdiction to review a petition for a writ of certiorari in that Court. *See* Rule 13.1, Rules of the United States Supreme Court; 28 U.S.C. § 1257(a).

4

During the direct-review stage of his case, Ezell did not seek certiorari review in the Alabama Supreme Court. His failure to do so precluded his seeking certiorari review in the U.S. Supreme Court. Therefore, for purposes of AEDPA, his conviction became final, and the one-year limitation period in § 2244(d)(1)(A) began to run, on July 25, 2012—the date on which the Alabama Court of Criminal Appeals issued a certificate of judgment. *See Brown v. Hooks*, 176 F. App'x 949, 951 (11th Cir. 2006). Absent statutory or equitable tolling, Ezell had until July 25, 2013, to file a § 2254 petition.

### 1. *Statutory Tolling*

Under 28 U.S.C. § 2244(d)(2), AEDPA's one-year limitation period is tolled during the pendency in the state courts of a properly filed state petition challenging the petitioner's conviction and sentence. *See, e.g., Tinker v. Moore*, 255 F.3d 1331, 1335 n.4 (11th Cir. 2001). As indicated above, Ezell filed a Rule 32 petition in the trial court on October 17, 2014. However, that filing and any subsequent related state proceedings (which concluded with the issuance of a certificate of judgment on June 8, 2018) had no tolling effect under § 2244(d)(2), because AEDPA's statute of limitations ran unabated without a tolling event for one year after July 25, 2012, before expiring on July 25, 2013. A Rule 32 petition filed after AEDPA's statute of limitations has expired cannot toll the statute, because no time remains to be tolled. "[O]nce a deadline has expired, there is nothing left to toll." *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004). "A state court filing after the federal habeas deadline does not revive" the statute of limitations period applicable to federal habeas review. *Id*.

The tolling provisions of 28 U.S.C. § 2244(d)(1)(B) through (D) provide no safe harbor for Ezell by affording a different triggering date such that AEDPA's limitation

period commenced on some date later than July 25, 2012, or expired on some date later than July 25, 2013. There is no evidence that an unlawful state action impeded Ezell from filing a timely § 2254 petition, *see* § 2244(d)(1)(B), and Ezell presents no claim resting on a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," *see* § 2244(d)(1)(C). Ezell also presents no ground for relief with a factual predicate not discoverable earlier with due diligence. *See* 28 U.S.C. § 2244(d)(1)(D).

The AEDPA statute of limitations for Ezell to file his § 2254 petition expired on July 25, 2013. He filed his § 2254 petition on July 1, 2018—almost five years after the limitation period had expired. His petition is untimely under 28 U.S.C. § 2244(d)(1)(A).

### 2.    *Equitable Tolling*

Ezell argues that the untimely filing of his § 2254 petition must be excused based on principles of equitable tolling because, he says, the failure of his appellate counsel to keep him apprised of the status of his direct appeal, particularly the Alabama Court of Criminal Appeals' ruling on his application for rehearing, prevented him from filing his § 2254 petition until well after AEDPA's one-year statute of limitations expired. Doc. 14 at 3–5; Doc. 19 at 1–5.

The limitation period in federal habeas proceedings may be equitably tolled on grounds besides those specified in the habeas statutes "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and

prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). The diligence required is reasonable diligence, not "maximum feasible diligence," *id.* at 653, and the extraordinary circumstance prong requires a causal connection between the circumstance and the late filing. *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011). "[E]quitable tolling is an extraordinary remedy, . . . limited to rare and exceptional circumstances and typically applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009). "The petitioner bears the burden of showing that equitable tolling is warranted." *Id*.

As the calculations above in this Recommendation reflect, the AEDPA statute of limitations for Ezell to file his § 2254 petition expired on July 25, 2013, which was one year after the Alabama Court of Criminal Appeals issued a certificate of judgment in the direct-review stage of Ezell's case. The issuance of that certificate of judgment started the running of the one-year federal clock. *See Brown*, 176 F. App'x at 951. Ezell maintains that he failed to file an Alabama Rule 32 petition during that one-year period, which, under 28 U.S.C. § 2244(d)(2), would have tolled the federal clock while proceedings on the Rule 32 petition (including any appeal) were pending, because he did not know about the Alabama Court of Criminal Appeals' issuance of a certificate of judgment until August 2014, when a family member met with his appellate counsel, Jeremy Armstrong, and learned that a certificate judgment had been issued in July 2012. Doc. 19 at 3.

a.   Facts Related to Equitable Tolling Claim

The record shows that on July 10, 2012, Ezell received a letter from Armstrong dated July 2, 2012, in which Armstrong informed Ezell that the Alabama Court of Criminal Appeals issued a memorandum opinion on June 15, 2012, affirming his conviction and

sentence and that Armstrong had applied for rehearing on Ezell's behalf with the Alabama Court of Criminal Appeals. Doc. 10-7 at 12–13, 14. Armstrong's letter advised Ezell that if the Alabama Court of Criminal Appeals declined to rehear his case, Armstrong intended to "appeal" to the Alabama Supreme Court, and that if the Supreme Court refused to hear the appeal, Ezell would have one year from issuance of a certificate of judgment to file a Rule 32 petition raising claims of ineffective assistance of counsel. *Id*. at 12–13. The letter stated that Armstrong would keep Ezell informed of any updates in his case. *Id*. at 13.

In a subsequent letter to Ezell dated July 13, 2012, Armstrong stated that the Alabama Court of Criminal Appeals had overruled Ezell's application for rehearing on July 6, 2012, and that Armstrong believed it would be futile for Ezell to seek further review by filing a petition for writ of certiorari with the Alabama Supreme Court. Doc. 10-7 at 21–22. Armstrong's letter said that a certificate of judgment in the case would be issued around July 20, 2012 (14 days after rehearing was denied ) if Ezell did not "appeal" further to the Alabama Supreme Court; that his letter concluded his representation of Ezell; and that he was returning the case file to Ezell's trial counsel. *Id.* at 22.

Armstrong's July 13, 2012 letter was addressed to Ezell at the St. Clair Correctional Facility in Springville, Alabama. Doc. 10-7 at 21. On that date, however, Ezell was housed at the Bibb County Correctional Facility in Brent, Alabama. Ezell represents that he never received Armstrong's July 13, 2012 letter; that the letter was not forwarded to him at the Bibb County Correctional Facility; and that the letter was not provided to him after he was transferred to the St. Clair Correctional Facility.[3] Doc. 19 at 3–4.

---

[3] It appears that Ezell was transferred from the Bibb County facility to the St. Clair facility in September 2012. Doc. 10-7 at 23.

According to Ezell, between July 2012 and October 2014, he sent multiple letters to Armstrong inquiring about the status of his appeal, but Armstrong failed to respond to any of his letters. Doc. 19 at 2–3. Ezell points to a copy of a letter to Armstrong dated July 11, 2012, in which Ezell acknowledged receiving Armstrong's July 2, 2012 letter and asked Armstrong to keep him apprised of the status of his case. Doc. 10-7 at 14. Also in the record is a copy of a letter that Ezell says he sent to Armstrong on September 28, 2012, advising Armstrong that he had been transferred to the St. Clair Correctional Facility and asking Armstrong about the status of his appeal. *Id*. at 23. In a letter to Armstrong dated June 10, 2013, Ezell again asked Armstrong about the status of his appeal. *Id*. at 15. Ezell sent another such letter to Armstrong on November 18, 2013. *Id*. at 16. The record contains no explanation of why Armstrong did not respond to Ezell's letters, nor does it establish with certainty that Armstrong received the letters.

In a letter to his trial counsel, Larry Joel Collins, dated April 30, 2014, Ezell expressed "significant concern" about the status of his case, telling Collins that Armstrong had failed to respond to his letters asking for information about his appeal, and that an acquaintance of his recently talked to Armstrong on his behalf and learned that his appeal was final in July 2012. Doc. 10-7 at 20. Despite indicating in the letter that he learned this information in April 2014, Ezell states in his § 2254 pleadings that it was August 2014 when he first learned, from a family member who met with Armstrong, that his appeal was final in July 2012. Doc. 19 at 3.

The record also reflects that on July 11, 2014, the Clerk of the Alabama Court of Criminal Appeals responded to an inquiry by Ezell regarding the status of his appeal and informed Ezell that his application for rehearing was overruled on July 6, 2012, and that

the Alabama Court of Criminal Appeals had issued a certificate of judgment on July 25, 2012, "thus concluding your appeal." Doc. 10-7 at 31.

b.   Extraordinary Circumstances

As grounds for applying equitable tolling, Ezell maintains that his appellate counsel, Armstrong, abandoned him by failing to apprise him of the Alabama Court of Criminal Appeals' ruling on his application for rehearing in July 2012 and by failing to respond to his subsequent letters inquiring about the status of his appeal. Doc. 14 at 3; Doc. 19 at 2–4. In *Maples v. Thomas*, 565 U.S. 266, 283–84 (2012), the U.S. Supreme Court recognized attorney abandonment as "cause" to excuse a procedural default in a habeas proceeding. Following *Maples*, the courts have recognized that attorney abandonment may constitute an "extraordinary circumstance" that, when coupled with a showing of diligence, may warrant equitable tolling of AEDPA's statute of limitations. *See, e.g., Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1228 (11th Cir. 2017).

As discussed above, the record shows that on July 13, 2012, Armstrong sent Ezell a letter informing him that the Alabama Court of Criminal Appeals overruled his application for rehearing on July 6, 2012; that he did not intend to file a petition for writ of certiorari with the Alabama Supreme Court; that unless Ezell himself sought review in the Alabama Supreme Court, a certificate of judgment would issue around July 20, 2012; and that he considered the letter to conclude his representation of Ezell.

However, Ezell did not receive Armstrong's letter because it was addressed to Ezell at a prison where he was not yet incarcerated, and it was not forwarded to Ezell at the institution where he was being held. Armstrong's error in misaddressing the letter may have amounted to ordinary negligence, but garden-variety negligence is not an

10

"extraordinary circumstance" for purposes of equitable tolling. *Holland*, 560 U.S. at 651–52; *see Justice v. United States*, 6 F.3d 1474, 1480 (11th Cir. 1993).

Still, the record reflects that Armstrong did not respond to the multiple letters Ezell sent him inquiring about the status of his appeal. Although Armstrong (as he stated in his "unreceived" July 13, 2012 letter to Ezell) may have considered his representation of Ezell to have concluded with the Alabama Court of Criminal Appeals' overruling of Ezell's application for rehearing, Armstrong had a duty to respond to any letters he may have received from Ezell inquiring about the status of his appeal, particularly given the importance that the finality of those proceedings had for Ezell's opportunity to pursue collateral review in state court and habeas review in federal court. Assuming that Armstrong received Ezell's letters, it is arguable that his failure to respond to Ezell's inquiries about the status of his appeal rose to the level of attorney abandonment amounting to an "extraordinary circumstance" for purposes of equitable tolling.

However, even though attorney abandonment may have occurred in this case, Ezell has not established the extraordinary circumstances prerequisite to equitable tolling. The attorney conduct alleged by Ezell resembles the situation in *Rodriguez v. Marshall*, 2009 WL 1424260 (E.D. Cal. May 20, 2009). In *Rodriguez*, appellate counsel failed to notify a petitioner that his petition for review was denied by the California Supreme Court, despite telling petitioner he would be kept informed. *Id*. at *3. As a result, the petitioner filed a petition for writ of habeas corpus four months after the one-year deadline. *See Rodriguez v. Marshall*, 234 F. App'x 746 (9th Cir. 2007). Nevertheless, the court in *Rodriguez* ruled that the appellate counsel's failure qualified as "nothing more than simple, ordinary

negligence on the part of appellate counsel." 2009 WL 1424260 at *6. In so ruling, the court noted:

> Counsel did not deceive or lie to Petitioner. Counsel did not act to thwart Petitioner in his filing of his federal petition. Counsel did not commit bad acts such as those noted in the cases which were deemed sufficiently egregious. Rather, appellate counsel made an error of omission.

*Id*. The court concluded that the petitioner had not shown "extraordinary circumstances" warranting equitable tolling.

Other cases have similarly determined that where an attorney fails to inform a client that an event has occurred triggering a limitation period, the attorney's failure does not meet the threshold showing of "extraordinary circumstances." *See, e.g., Kitchen v. Danials*, 2016 WL 4545331, at *3 (N.D. Ala. Aug. 9, 2016) ("[An] allegation that appellate counsel failed to inform Petitioner that the Alabama Supreme Court had quashed the writ of certiorari and entered a certificate of judgment is not the type of egregious attorney conduct required to apply equitable tolling. Rather, this is a description of mere negligence.") (citing cases); *LaCava v. Kyler*, 398 F.3d 271, 276 (3d Cir. 2005) (lack of notice from petitioner's state appellate attorney that his request to appeal had been denied did not amount to an extraordinary circumstance); *Menjivar v. Frauenheim*, 2015 WL 2398560, at *3 (N.D. Cal. May 19, 2015) (petitioner not entitled to equitable tolling "where counsel did not inform him that his conviction had been affirmed on direct appeal") (citing cases); *Bobadilla v. Gipson*, 2014 WL 3895992, at *4 (C.D. Cal. June 30, 2014) ("appellate counsel's actions in failing to inform Petitioner of the denial of his petition for review and to return the case records until approximately one year after the [California Supreme Court] decision were not so egregious as to constitute an extraordinary circumstance"); *Anguiano-*

*Magana v. Franke*, 2012 WL 6203163, at *3 (D. Or. Nov. 14, 2012) ("Here, even assuming counsel was negligent in failing to advise Anguiano-Magana that final judgment had been entered and notify him of the AEDPA's one-year statute of limitations, such negligence is not sufficiently egregious to meet the 'extraordinary misconduct' standard upon which equitable tolling is based."); *Sumpter v. Sears*, 2011 WL 31188, at *5 (E.D.N.Y. Jan. 5, 2011) ("equitable tolling is not triggered by an appellate lawyer's failure to inform his client that his application for leave to appeal has been denied.") (citing *McCowen v. Conway*, 2008 WL 123940, at *4–5 (E.D.N.Y. Jan. 10, 2008)).

Based on the weight of authoriy cited above, this court concludes that Ezell has failed to demonstrate that extraordinary circumstances warrant equitable tolling of the federal limitations period.

### c.   Reasonable Diligence

To be entitled to equitable tolling, Ezell must also show he exercised reasonable diligence in pursuing his rights. *Holland,* 560 U.S. 631 at 653. Here, too, the court finds that Ezell fails to make the required showing. The record reflects that Ezell sent Armstrong letters on September 28, 2012; June 10, 2013; and November 18, 2013 asking Armstrong about the status of his appeal. The first two of these letters were filed within one year after the Alabama Court of Criminal Appeals' decision affirming his conviction. Although Ezell received no response from Armstrong, the next indication in the record of Ezell's attempting to learn the status of his appeal is a letter that Ezell sent to his trial counsel, Larry Joel Collins, in April 2014. In that letter, Ezell indicated that he had recently learned from an acquaintance who spoke to Armstrong that his appeal was final in July 2012.

The record reflects that Ezell first sought to contact the Alabama Court of Criminal Appeals by letter to determine the status of his appeal in July 2014. The July 2014 inquiry to the Alabama Court of Criminal Appeals appears to have been Ezell's only attempt to contact the state court about his appeal during the two years that followed the decision affirming his conviction. Ezell delayed making this inquiry of the court for two years despite having received no response to his letters to Armstrong—and also despite his earning, from an acquaintance who spoke to Armstrong in April 2014, that his appeal was final in July 2012.

It is not apparent why the acquaintance who spoke to Armstrong about the status of Ezell's appeal in April 2014, or someone else, could not have been enlisted by Ezell to inquire much earlier—specifically, before expiration of the one-year AEDPA limitation period on July 25, 2013—or why Ezell himself could not have made an earlier inquiry of the Alabama court. Further, this court finds that the lack of any response from Armstrong to Ezell's letters should have triggered Ezell to attempt with more diligence than is reflected in the record to ascertain the status of his appeal while the AEDPA federal clock was running.[4] Consequently, Ezell did not act with the reasonable diligence in pursuing his rights required to warrant equitable tolling.

Because Ezell fails to establish both that extraordinary circumstances prevented him from filing a timely § 2254 petition and that he acted with reasonable diligence in pursuing

---

[4] It is important to note that, under the facts alleged by Ezell, Armstrong did not take make representations to Ezell, following Ezell's written inquires, that might have falsely assured Ezell that his appeal remained pending. Rather, according to Ezell, Armstrong did not respond at all to his inquiries. Thus, it cannot be said that Armstrong acted affirmatively to mislead Ezell into believing that his appeal remained pending after the appeal was, in fact, final and the federal clock was running.

his rights, he is not entitled to equitable tolling of the limitation period. Therefore, his § 2254 petition is time-barred and his claims for relief are entitled to no further review. *See* 28 U.S.C. § 2244(d)(1)(A).

**B.      Ezell Demonstrates No Merit In His Claims.**

Even if this court were to accept Ezell's argument for equitable tolling and excuse the untimeliness of his § 2254 petition, Ezell would not be entitled to habeas relief because he demonstrates no merit in his claims.

*1.      AEDPA Standard Of Review*

The AEDPA modified the federal courts' role in reviewing state prisoner habeas applications to prevent "federal habeas 'retrials'" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). For a claim adjudicated on the merits by the state courts and properly before the federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this court may grant a writ only if the state court identified the correct governing federal legal principle but applied

that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams v. Taylor*, 529 U.S. 362, 411–13 (2000) (O'Connor, J., delivering the opinion regarding Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter,* 562 U.S. 86, 102 (2011).

The Supreme Court has reemphasized this deferential standard, holding that "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

As for the unreasonable-determination-of-facts prong under § 2254(d)(2), the federal court "may not characterize these state court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain,* 576 U.S. 305, 313–14 (2015) (citation omitted). "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id*. at 314 (quotation

16

marks and citations omitted). Factual issues made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 2.   *Failure to Instruct Jury on Manslaughter*

Ezell claims that the trial court erred by refusing to instruct the jury on the lesser-included offense of manslaughter. Doc. 1 at 5; Doc. 1-1 at 14–16.

As previously noted, Ezell was indicted for the murder of his wife, Felisha, in violation of ALA. CODE § 13A-6-2.[5] The case went to trial, and after the presentation of evidence by the State, the trial court informed Ezell's trial counsel, Collins, that the court did not intend to instruct the jury on the lesser-included offense of manslaughter under ALA. CODE § 13A-6-3(a)(2), also known as "heat-of-passion manslaughter."[6] After consulting with Collins, Ezell elected to enter a guilty plea to the murder charge while specifically reserving for appeal the issue whether the trial court should have instructed the jury on heat-of-passion manslaughter.

Armstrong represented Ezell on appeal. Although the transcript of the guilty plea proceeding was filed with the record on appeal, Armstrong failed to ensure that the trial transcript (which included the testimony of the State's witnesses) was filed with the record. Armstrong pursued Ezell's reserved claim about the trial court's refusal to instruct the jury on manslaughter. In its memorandum opinion denying the claim, the Alabama Court of

---

[5] ALA. CODE § 13A-6-2(a)(1) provides that "[a] person commits the crime of murder if[,] . . . [w]ith intent to cause the death of another person, he or she causes the death of that person or of another person."

[6] ALA. CODE § 13A-6-3(a)(2) provides that "[a] person commits the crime of manslaughter if . . . [h]e causes the death of another person under circumstances that would constitute murder under [ALA. CODE] Section 13A–6–2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."

Criminal Appeals noted that the evidence from trial was not included in the appeal record.

Doc. 10-4 at 2. However, the Court pointed to Ezell's admissions during his guilty plea

colloquy, citing in particular the following portion:

> "THE COURT: And were you and your wife having an argument?
>
> "THE DEFENDANT [Ezell]: Yes.
>
> "THE COURT: And as a result of the argument, you went from downstairs to upstairs; is that correct?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: And upstairs, testimony has been so far that you shot her in the bathroom while she was in the bathroom and shot her twice while she was in the bathroom; is that correct?
>
> "THE DEFENDANT: I don't remember exactly how many times I shot her in the bathroom, but I did shoot her.
>
> "THE COURT: And then she was in the closet, and then you shot her six more times while she was in the closet; is that correct?
>
> "THE DEFENDANT: Again, I'm not sure exactly how many times.
>
> "THE COURT: And she died as a result of those gunshot wounds; is that also correct?
>
> "THE DEFENDANT: Yes, sir.
>
> "THE COURT: All right. And as part of the indictment, it alleges that you intended to kill Felisha Ezell and did you cause her death by shooting her with a pistol. The fact that she was shot eight times with a pistol, do you think you intentionally caused her death?
>
> "THE DEFENDANT: Yes."

Doc. 10-4 at 2–3. Based on the record, the Alabama Court of Criminal Appeals held that

Ezell had failed to prove error by the trial court's refusal to instruct the jury on the lesser-

included offense of manslaughter. *Id.*

Ezell admitted to the elements of the murder charge when pleading guilty, and the legal sufficiency of the State's evidence to support a murder conviction has not been questioned. Although Ezell argues that the trial court should have instructed the jury on the lesser-included offense of heat-of-passion manslaughter, he recounts no evidence presented at trial that might have warranted a jury instruction on heat-of-passion manslaughter, and he proffers no evidence that he would have presented to the jury that would have entitled to him to a jury instruction on heat-of-passion manslaughter. Ezell appears to assume he was entitled to a jury instruction on heat-of-passion manslaughter merely because he and his wife were having marital problems and his wife was involved in an extramarital affair that she allegedly told him she would not end. These matters, however, even if true, are not enough to warrant a jury instruction on heat-of-passion manslaughter.[7] Moreover, Ezell cannot demonstrate prejudice from the trial court's refusal to instruct the jury on heat-of-passion manslaughter, because he has not shown that the jury probably would have convicted him of the lesser-included offense had the trial court given the instruction.

Federal courts may grant habeas relief only based on federal law that has been clearly established by the Supreme Court. 28 U.S.C. § 2254(d)(1). The Supreme Court has never held that due process requires instructing the jury on a lesser-included offense in a non-capital case. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). Simply put, "the Constitution does not require a lesser-included offense instruction in non-capital cases."

---

[7] A frequently cited example of the heat-of-passion defense is "discovered adultery." Under Alabama law, however, even where a spouse finds his mate in a compromising position, the spouse cannot claim "heat of passion" in a murder trial where there has been time for the wronged spouse's "passion to cool and for reason to re-assert itself." *Farr v. State*, 54 Ala. App. 80, 83, 304 So.2d 898 (1974).

*Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). The undersigned finds that Ezell fails to show that the Alabama Court of Criminal Appeals' adjudication of his claim resulted in a decision that was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court, or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in state court." *See Dunn v. Madison*, 138 S. Ct. 9, 11 (2017). Consequently, Ezell is not entitled to relief on this claim.[8]

### 3.     *Ineffective Assistance of Trial Counsel*

Ezell claims his trial counsel, Collins, rendered ineffective assistance by advising him to plead guilty because the case would be reversed on appeal due to the trial court's refusal to instruct the jury on heat-of-passion manslaughter. Doc. 1 at 7; Doc. 1-1 at 16–19. Ezell maintains that Collins misinformed him by telling him his case would be reversed based on an alleged error that the Alabama Court of Criminal Appeals ultimately determined did not exist. *See* Doc. 1-1 at 16–19.

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the clearly established federal law on claims of ineffective assistance of counsel and requires that a petitioner alleging ineffective assistance establish that his counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. *Id.* at 687. This requires showing both that "counsel made errors so serious that counsel was not functioning as the

---

[8] Although Ezell failed to exhaust this claim in the state courts on direct review because he did not file a petition for writ of certiorari in the Alabama Supreme Court, this court considers his allegations regarding Armstrong's failure to notify him of the finality of his appeal as an assertion of "cause" excusing this procedural default. However, this court pretermits discussion of the procedural default question and instead has assessed the merits of Ezell's claim regarding the trial court's refusal to charge the jury on manslaughter.

'counsel' guaranteed the defendant by the Sixth Amendment," and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694.

An attorney's performance is presumed to have been reasonable and must not be examined aided by judicial hindsight. *Messer v. Kemp*, 760 F.2d 1080, 1088 (11th Cir. 1985). Federal courts apply a "heavy measure of deference to counsel's judgments." *Singleton v. Thigpen*, 847 F.2d 668, 670 (11th Cir. 1988) (quoting *Strickland*, 446 U.S. at 691). A federal court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quotation marks and citation omitted).

At the evidentiary hearing on Ezell's Rule 32 petition, Collins testified that, before the case went to trial, the State offered Ezell a 30-year sentence in exchange for a guilty plea to the murder charge, but Ezell did not accept this offer. Doc. 10-8 at 49–50. The State, according to Collins, did not offer a deal for a plea to manslaughter. *Id.* at 49. Collins stated that he intended to put Ezell on the stand at trial, and he believed that if the jury heard Ezell testify about his state of mind over his wife's affair, the jury might be sympathetic to a heat-of-passion manslaughter argument by the defense. *Id*. at 52.

Collins testified that, after the State presented its case at trial, during a discussion about jury charges, the trial court indicated it would not instruct the jury on the lesser-included offense of manslaughter. Doc. 10-8 at 51. After the trial court indicated it would

not instruct the jury on manslaughter, Collins informed Ezell of his various options and advised Ezell to plead guilty to the murder charge while reserving the trial court's ruling for review in an appeal. *Id.* at 55, 60. Collins testified that, in so advising Ezell, he reasoned that Ezell could appeal the trial court's ruling and possibly have his conviction overturned on appeal; that the appellate court, in reversing the conviction, might direct the trial court to "consider, seriously, a manslaughter charge"; and that the State might then be more willing to offer a plea for manslaughter, not murder. *Id*. at 55–56. Collins testified that another hope he had in advising Ezell to plead guilty was that a reversal by the appellate court could result in a new trial with a different (presumably more sympathetic) judge. *Id.* at 61. Collins stated that Ezell agreed with his advice to plead guilty. *Id*. at 55–56.

Collins testified that he believed the trial court would likely have sentenced Ezell to 30 years in prison had he been convicted of the murder charge after a trial. Doc. 10-8 at 54. He acknowledged, however, that it was possible the trial court could have imposed a longer sentence if Ezell had been convicted of murder after a trial. *Id.* He stated that he never promised Ezell he would receive a specific sentence if he pled guilty to murder. *Id*. at 55.

In affirming the trial court's denial of Ezell's Rule 32 petition, the Alabama Court of Criminal Appeals found:

> Ezell's argument that his trial counsel was ineffective is without merit. Trial counsel gave sound strategical advice to Ezell that he should plead guilty because the trial court had refused to give a manslaughter charge before the defense had presented its case. Counsel reasoned that Ezell could appeal that decision and counsel reserved the issue for appeal[.]

Doc. 10-11 at 7.

Here, it was not professionally unreasonable for Collins to advise Ezell to plead guilty with the hope of (1) obtaining a reversal on the issue reserved for appeal; (2) making

the State more likely, after a reversal, to offer a plea deal on the lesser-included offense of manslaughter; or (3) obtaining a new trial with a possibly more sympathetic trial judge. Further, and especially given the evidence, it would not have been professionally unreasonable for Collins to advise Ezell to plead guilty to the murder charge hoping the sentence imposed in that circumstance could have been shorter than a sentence imposed for a murder conviction after a trial. Finally, Ezell shows no prejudice resulting from Collins's advice to plead guilty, because he points to nothing demonstrating a reasonable likelihood of acquittal had he proceeded with his trial or demonstrating that the trial court would have instructed the jury on the lesser-included offense of heat-of-passion manslaughter.

Upon consideration of the record and the relevant legal principles, the court finds that the state court decision rejecting Ezell's claim of ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of *Strickland* and that the decision did not involve an unreasonable determination of the facts in–light of the evidence presented. Thus, Ezell is entitled to no relief on this claim.

### 4.    *Ineffective Assistance of Appellate Counsel*

Ezell claims that his appellate counsel, Armstrong, was ineffective for failing to obtain the entire record on appeal so the Alabama Court of Criminal Appeals could assess the merits of his claim regarding the trial court's refusal to instruct the jury on manslaughter. Doc. 1 at 8; Doc. 1-1 at 21–22.

At the evidentiary hearing on Ezell's Rule 32 petition, Armstrong indicated he believed his failure to ensure that the trial transcript was included with the record on appeal was deficient, but that he could not say his deficient performance prejudiced Ezell because

he was unaware of any trial testimony that might have resulted in the Alabama Court of Criminal Appeals' finding reversible error in the trial court's refusal to instruct the jury on heat-of-passion manslaughter. Doc. 10-8 at 29–31, 35–38, 43.

In affirming the denial of Ezell's Rule 32 petition, the Alabama Court of Criminal Appeals found:

> Ezell has failed to show that his appellate counsel's performance prejudiced his case; therefore, he has failed to prove ineffective assistance of counsel. Appellate counsel acknowledged that he did not realize until too late that the trial transcript prior to the guilty plea proceedings was not filed with this Court for appeal, and this Court was unable to properly review this case without that transcript. However, although appellate counsel's performance was deficient, he did not prejudice Ezell[.]
>
> Ezell admitted that he intended to kill the victim. The State's evidence would not have changed that admission and the fact that Ezell and his wife were having marital problems is implied by his admission that they had been fighting and does not alone require a manslaughter charge.

Doc. 10-11 at 11–13.

As stated above in this Recommendation, Ezell has recounted no evidence presented at trial that might have warranted a jury instruction on heat-of-passion manslaughter, and he has proffered no evidence that he would have presented to the jury that would have entitled him to a jury instruction on heat-of-passion manslaughter. Consequently, he fails to show how he was prejudiced by Armstrong's failure to ensure that the trial transcript was included with the record on appeal.

The court finds that the state court decision rejecting Ezell's claim of ineffective assistance of appellate counsel was neither contrary to nor an unreasonable application of *Strickland* and that the decision did not involve an unreasonable determination of the facts in light of the evidence presented. Thus, Ezell is entitled to no relief on this claim.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Ezell's petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case DISMISSED with prejudice because:

1.  The § 2254 petition was filed after expiration of the one-year limitation period in 28 U.S.C. § 2244(d) and is time-barred; and

2.  Ezell fails to demonstrate that the state court decision rejecting his claims was contrary to and an unreasonable application of *Strickland v. Washington* and that the decision did not involve an unreasonable determination of the facts in light of the evidence presented.

It is further ORDERED that the parties shall file any objections to this Recommendation on or before **September 1, 2021**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc*., 667 F.2d 33 (11th Cir. 1982*). See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, on this the 24th day of August, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge